DANIEL, J.,
delivered the opinion of the Court.
This is an adjourned case from the Superior Court of Law of the County of Chesterfield, from which it appears that the Defendant was presented on the sixth day of June, in the year 1826, by a grand Jury upcn their oath, “for keeping and exhibiting a gaming table commonly called *Blind-hazard, alias Hap-hazard, being a table of like nature or kind, with a Faro Bank, &c., at the muster ground, on the premises of a certain Dickerson Wills, situate in the County aforesaid, on a muster-day and within six months (then) last past.”
On this Presentment of the Grand Jury, an Information was regularly filed, which charged (besides having two other counts not necessary to be particularly noticed,) “that the said Dickerson Wyatt, of the County of Chesterfield, on the 8th April, 1826, with force and arms, at the house of one Dickerson Wills, in the County aforesaid, unlawfully, wilfully, and wickedly did keep and exhibit a certain unlawful gaming table called Hap-hazard, otherwise called Blind-hazard, otherwise called Snickup, otherwise called Sweat, being a gaming table of the same, or like kind with Faro Bank, whereon and whereat divers persons did then and there, together with the said Dickerson Wyatt, the keeper thereof, unlawfully, wickedly, and wilfully play, and the games then and there played thereon, being games played with cards,” &c. The Defendant pleaded not guilty. The Jury returned a verdict: “We of the Jury, find the Defendant guilty, but ignorantly so, he not knowing at the time that the Law embraced this case, and do therefore recommend him to the mercy of the Court.” And thereupon, the Defendant moved the Court for a new trial, and after-wards, submitted, in addition, a motion “to arrest the Judgment, because the matter stated in the Information warrants no Judgment against the Defendant, or at most, a Judgment for a fine of twenty dollars only.” Upon this state of the case, the Judge of the Superior Court of Law, with the consent of the Defendant, adjourned for novelty, and difficulty, to the General Court, the following questions: “1st. Is the offence charged in the Information, a violation of the 19th section of the Act to prevent unlawful gaming, in the first volume of the Revisad Code, p. 567? 2d. Do the facts prove to the Jury, amount in Law, to a violation of the *said section of the said Act? 3d. What Judgment or Order should be made or given in this case?” And by consent, a statement of the case, made in writing, and signed by the Judge, is made a part of the Record in this case, and to be regarded as if spread at large upon the motion for a new trial. The statement is as follows: “On the trial of this case, the evidence proved that the Defendant exhibited the game charged in the Information, at the time and place charged. The game played with cards in the following manner. The exhibitor seated himself at a table with a pack of cards, showing at the same time a small stake of cash on the corner of the table by him; he then, in the presence of those surrounding the table, (inclined to bet) cut the cards off the pack into an indifferent number of parcels, and every one who chose to adventure, pointed out to the dealer or cutter, the parcel on which he should stand; the wager was, that the bottom card of the player’s parcel is higher than that of the dealer’s parcel, the dealer having, the advantage of winning on equal cards. The game of Faro Bank was described by the evidence, and the Court instructed the Jury that the question whether the game was one of a like nature, or kind with Faro Bank, was a question of fact for them to decide, but however strong the resemblance might in other respects be, if the game in question is not one usually resorted ror the sake of gain, it did not come within the meaning of the Act under which the Defendant is prosecuted, but if the resemblance is in both particulars proved to the Jury, the Defendant should be found guilty. The evidence fully proved the exhibition in this case to have been for the sake of gain, and the game itself may be fairlv termed one of the numerous expedients resorted to at public places for obtaining money, by inducing others to bet at unequal games; though as proved in this case, had been often publicly and openly played by men of good character, and not professed gamblers, and sometimes exhibited merely to gratify curiosity, this particular game being one of the *lower order, calculated to win money in very small sums generally.”
The instructions which were thus given by the Court to the Jury, cannot be complained of by the Defendant. Perhaps they are more favorable to him than the Law would strictly warrant.
The first and second questions propounded in reference to the nineteenth section of the Act of the General Assembly to prevent unlawful gaming, show evidently a mistake; perhaps it is a clerical mistake. Those questions become immaterial in this case, and therefore require no further notice, because the motions to arrest the Judgment, and for a new trial, (together *872 with the statement made part of the Record,) and the third question referred to this Court, bring up the whole subject of Law which affects the case. The third question is, “what Judgment or Order should be made or given in this case?”
To answer this question, this Court must enquire what is the Law? What is the offence charged in the Information, and of which the Defendant stands convicted by the Jury? Was the Jury authorised, from the evidence set forth, to find the Defendant guilty of that offence? What punishment, if any, is prescribed by Law for the offence described in the Information?
With respect to the first branch of this enquiry, we find in the 1st vol. Rev. Co. ch. 148, § 17, that- “every keeper or exhibitor of any of the tables commonly called A. B. C. or E. O. tables, or Paro Bank, or any other gaming table of the same, or like kind, under any denomination whatsoever, or whether the same be played with cards or dice, or in any other manner whatsoever, shall, upon conviction, be sentenced to hard labour, and imprisonment in the Public Jail and Penitentiary-house, for any period of time, not less than one, nor more than two years,” &c.
As to the second branch of the enquiry, we find from the Information, that the Defendant is charged, that he “did keep and exhibit a certain unlawful gaming table, called *Hap-hazard, otherwise called Blind-hazard, otherwise called Snickup, otherwise called Sweat, being a gaming table of the same or like kind with Paro Bank,” &c. ; and this charge so set forth in the Information, the Jury by their verdict have said is true. And this brings up the third branch of the enquiry: Does the evidence warrant the finding of the Jury? This Court taking the evidence as set forth by the Judge before whom the cause was tried, can see no just grounds upon which the Jury could have found a verdict in favor of the Defendant.
The last branch of the enquiry is, what punishment, if any, is prescribed by Law for the offence described in the Information, and of which offence the .Defendant is found guilty?
In the Act of the General Assembly, already quoted, it is seen, that that Act prescribes that the person convicted shall “be sentenced to hard labour, and imprisonment in the Public Jail and Penitentiary-house, for a period of time not less th.an one nor more than two years. ” But there is a subsequent Act of Assembly, which passed 21st February, 1823, further to amend the Penal Laws of the Commonwealth, which prescribes, in § 1, “that henceforth when any person shall be convicted of any crime, or offence, now punishable by imprisonment in the Public Jail and Penitentiary-house, for a period not exceeding two years, such person shall, instead of the punishment now prescribed by Law, undergo imprisonment in the Jail of the County or Corporation where such conviction shall take place, for a period not more than six months nor less than one month, at the discretion of the Court, and be there kept on low and coarse diet, as prescribed by the Law for Convicts in the Penitentiary, and shall moreover be punished with stripes, at the discretion of the Court, to be inflicted at one time, or at different times during such confinement, as suc.h Court may direct, provi-ed the same do not exceed thirty-nine at any one time,” &c. Sess. Acts of 1822, ch. 32, § 1. The punishment, therefore, to be inflicted on the Defendant *by the Judgment of the Superior Court of Law of the County of Chesterfield, must be in conformity to the Act of Assembly last recited, if this Court shall so direct in answer to the question, “What Judgment or Order should be made or given in this case?” For, although this last Law is now happily repealed by the Act of 1827, ch. 36, § 4, as to all offences of the character now under consideration, which may have been committed since the date of the repealing Act, yet it is still in force as to offences previously committed.
This brings up fairly the main question, what Judgment shall be given in this case? and opens the way for the consideration of all the arguments which have been so ably, and earnestly urged before this Court, in opposition to rendering any Judgment against the Defendant under this prosecution.
The arguments of the Defendant, made by his Counsel, rest mainly upon two propositions. The first is, that the Law applicable to this case, to be deduced from the several Acts of the General Assembly, would be unconstitutional.
The second is, that the provisions of the Act, by which the offence stated in the Information is supposed to be designated, are too vague and uncertain to be made applicable to any but the three enumerated games of A. B. C. and E. O. and Faro Bank, and therefore Judgment ought to be given for the Defendant.
The first proposition involves a question of the greater magnitude, which should never be lightly and unnecessarily introduced into the deliberations of this Court. Whether this Court has authority to declare an Act of the General Assembly to be unconstitutional, and therefore void, is a question which admits of a great variety of opinion. Judicially to assert or to deny such authority, unless upon an occasion which palpably required such an opinion by the Court, would expose it to the censure of all, without calling to its support the talents and influence of those who might concur in the principle asserted, if such principle <'were palpably applicable to the case decided. This Court therefore declines the discussion, not because it would not firmly meet it if a palpable case were to require it, but because the case now under consideration does not require it, further than the notice now to be taken of it.
It is urged that the Act of 1823, already referred to, while it properly limits the authority of the Court to a reasonable extent of punishment to be inflicted on the party convicted, by imprisonment not less than one nor more than six months, yet author-ises the Court to inflict the lightest pun *873 ishment by stripes imaginable, or the most cruel, even necessarily extending' to death itself, for an offence of the same character and grade. For that, as the Court may impose an imprisonment for six months, and may also direct the party imprisoned to receive any number of stripes, at different times, not exceeding thirty-nine at any one time, during his confinement, at the discretion of the Court, it is perfectly evident that the Court, by virtue of this Law, might exercise its discretion to sub-serve vindictive passions, and so as to direct the party convicted to be subjected to thirty-nine stripes every day of the six months, which would inevitably terminate in death; a death produced by the most cruel torture. That by the Bill of Sights, properly regarded as part of the Constitution of Virginia, the C4eneral Assembly is restrained from authorising by Law, “cruel and unusual punishments (to be) inflicted,” and that therefore the authority delegated to the Courts, as above described by the Act aforesaid, being prohibited to the Legislature, by the Constitution, cannot by it be delegated to the Courts, and that the Act aforesaid is therefore void, and ought so to be regarded by this Court.
It may be allowed, that the Act in question might be regarded as less objectionable, if the aggregate number of stripes, which might be inflicted for any one offence, had been limited as the term of imprisonment is; but this imperfection, if one, does not involve the consequences contended for, nor is it allowed that the discretion of the Court mentioned ‘x'in the Act, can rightfully be regarded as unlimited. The responsibility of the Court might have been lighter, if the Act had been more cautiously dictated; but in all cases, where by Law, whether Statute or Common Law, a subject is referred to the discretion of the Court, that must be regarded as a sound discretion, to be exercised according to the circumstances of each particular case. If tne Judge should not so limit the authority of his discretion, but extend it further to subserve motives of oppression, or his own vindictive passions, he might and would be impeached. The punishment of offences by stripes is certainly odious, but cannot be said to be unusual. This Court, regarding the discretion deleg-aicd by the Act in question, as being of the same character with the discretion always exercised by Common Law Courts to inflict fine and imprisonment, and subject to be restrained by the same considerations, does not feel itself at liberty in this case to refuse to obey the Legislative will, nor to execute that will by its judgments.
The second proposition, which is, that the act charged in the Información is not sufficiently designated by the terms of the Law in question, as an offence, and therefore. for want of certainly, ought not to be subjected to the penalties prescribed against the games of A. B. C., E. O. or Faro Bank, remains to be considered. The Jury have found the Defendant guilty of keeping and exhibiting a gaming table “of the same or like kind with Faro Bank;” and the evidence upon which the verdict was rendered, is stated, which proves the gaming as charged in the Information and states also the manner in which the game is played, and the chances in favour of the keeper or exhibitor of the table; and the question to be decided by this Court is of a mixed character, depending upon the terms, “same or like kind,” and whether the game described by the evidence, is a game of the same or like kind with Faro Bank?
‘The words of the seventeenth section of the Act of Assembly, which affects this subject, have been already recited. That section enumerates the games of A. B. C. and E. O. and Faro Bank, as gaa.es prohibited, and subject to penalties, and making the distinctive characters of those games as the standard and example of the kind of game prohibited, subjects all games of the same or like kind, to like penalty and prohibition. Before we can say that the game described in the Information, is of the same or like kind with those enumerated in the Act, it is necessary to settle some notion of the kind or class of gaming to which the latter belong. This Court is not advised that there is, or can exist but two kinds or classes of games of chance. The first is, where the chances are equal all other things being equal. The second is, where all other things being equal, the chances are nevertheless unr equal, that is, in favor of one side. The standard games enumerated, so far as they are understood by this Court, are of the second class, and in all three of them the chances are in favor of the exhibitor of the game or table. Now, the playing charged in the Information, is at a game, which by the evidence is proved to be a game wherein the chances are unequal, and in favor of the exhibitor of the table. It must, therefore, belong to the same class, and be of the like kind of gaming to which the enumerated games belong. The advantages or chances in favor of the player or exhibitor of the table, are not the same in each case, but in each case the chances are in his favor; and this is the distinctive character which marks them as games “of the same or like kind:” and when of the same or like kind, as classed above, it matters not by what denomination they are distinguished, nor whether they are played with cards, or dice, or in any other manner whatsoever. All such games, when played or exhibited lucri causa, are prohibited by the Act under consideration, and subject to the penalties prescribed; but, if exhibited and played, nor for the purposes of gain, they may, or may not be offences x'againsat the General Law prohibiting gaming at cards, &c., according to circumstances.
The following is to bo entered as the Judgment of the Court.
This Court is of , opinion, and doth decide, that the motion in arrest of Judgment, and also the motion for a new trial, ought to be over-ruled, and that Judgment should be rendered against the Defendant, of imprisonment and stripes, according to Law.